**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION**

**IN RE:**

| | | |
|---|---|---|
| **IN RE: W. GATES REAL ESTATE** | ) | |
| **HOLDINGS, LLC** | ) | **CASE NO. 4:26-bk-11110-NWW** |
| | ) | **CHAPTER 11** |
| **DEBTOR.** | ) | |

# DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED JULY 28, 2026

## PREAMBLE

W. Gates Real Estate Holdings, LLC (hereinafter "Debtor"), pursuant to 11 U.S.C. § 1121, respectfully submit this Chapter 11 Plan (the "Plan") for the case of W. Gates Real Estate Holdings, LLC (4:26-bk-11110-NWW). The Plan is designed to reorganize the Debtor's bankruptcy estate—through re-amortization of debt at currently prevailing terms and interest rates, and application of cash payments from rental revenues—thereby providing all creditors and parties in interest an amount that is equal to, or in excess of, the amount they would receive or retain if the estate were liquidated under Chapter 7 of Title 11, and the opportunity for the Debtor to retain assets.

## ARTICLE I
BACKGROUND

A. *Foreclosure*

Debtor is a member-managed Tennessee Limited Liability Company formed in 2021 that provides both long term and short term residential rentals, in addition to sale and purchase of residential real estate. Debtor's principal place of business is 2794 Sanford Rd, Nolensville, TN 37135. As of the Petition Date, Debtor had approximately 5 residential real properties with a total estimated market value of $2,584,700.[1] Claims filed to date include $1,902,246.69 in total secured debt and $5,870.08 in priority debt. There were no filed unsecured claims, and 11 U.S.C. § 1111(a) nonpriority unsecured claims total $121,500.00.[2]

Due to temporary non-occupancy of units, Debtor fell behind on mortgage obligations owed to Wilson Bank & Trust (hereinafter "Wilson") on the Deed of Trust indebtedness recorded at Book 9377, Page 537, Williamson County Register's Office, secured by the real property commonly known as 2731 Sanford Road, Nolensville, TN. As a result thereof, Wilson initiated foreclosure proceedings with an auction date scheduled for May 1, 2026.

Fearing immediate and irreparable harm, Debtor contacted Tom Bible Law seeking protection and an opportunity to reorganize its debt. On April 29, 2026 ("Petition Date") Debtor filed a voluntary petition under the provisions of Chapter 11 of the United States Bankruptcy Code, with the United States Bankruptcy Court for the Eastern District of Tennessee.

---

[1] See Docket no. 36.
[2] See Docket no. 38.

*B. Income and Assets*

Debtor earns approximately $17,550 per month.[3] Please see Debtor's disposable income set forth in **Exhibit C**.

The Debtor's primary assets are as follows:

1) First Bank Account xxxx4058 with a balance of $8,953.00 as of the Petition date;[4]
2) The real property commonly known as 304 Scruggs Ave, Franklin, TN 37064, worth approximately $519,900.00[5];
3) The real property commonly known as 943 Overlook Trail, Stewart, TN 37175, worth approximately $495,000.00 as of the Petition Date[6];
4) The real property commonly known as 2731 Sanford Rd, Franklin, TN 37135, worth approximately $934,900.00 as of the Petition Date;[7]
5) The real property commonly known as 2794 Sanford Rd, Nolensville, TN 37135, worth approximately $951,400.00 as of the Petition Date;[8] and
6) The real property commonly known as 500 Rucker Rd, Murfreesboro, TN 37127 worth approximately $698,400.00 as of the Petition Date.[9]

*C. Post-Petition Progression*

The Debtor filed its voluntary Chapter 11 Bankruptcy Petition on April 29, 2026.[10] After filing, the Debtor obtained Court approval to employ the Law Office of W. Thomas Bible, Jr. as bankruptcy counsel (docket no. 47). The meeting of creditors was held on June 2, 2026,[11] a status conference held on June 11, 2026,[12] and a realtor was employed for the purpose of selling 2731 Sanford Rd,[13] the closing for which is scheduled to occur in August 2026.[14]

**ARTICLE II**
SUMMARY OF PLAN

As explained in more detail below, the Debtor intends to reorganize under Chapter 11 through use of rental revenues and re-amortization of debt. The Plan provides for priority administrative expenses, one class of priority unsecured claims, ten classes of secured claims, and one class of general nonpriority unsecured claims. It further provides for payments beginning on the Effective Date of the Plan (with disbursements to unsecured creditors starting on the third full month after the Effective date), and that nonpriority unsecured creditors will be paid in full. This is greater than the amount they would receive in the event of a Chapter of liquidation (as set forth in the below Liquidation Analysis).

---

[3] See attached budget. Given that 2731 Sanford has fallen off of rent roll, revenue has decreased to approximately $17,550 per month.
[4] See docket no. 36.
[5] https://www.zillow.com/homedetails/304-Scruggs-Ave-Franklin-TN-37064/42633865_zpid/
[6] https://www.zillow.com/homedetails/943-Overlook-Trl-LOT-81-Stewart-TN-37175/449324909_zpid/
[7] See Docket no. 36.
[8] *Id.*
[9] *Id.*
[10] See docket no. 1.
[11] See docket no. 53.
[12] See docket No. 57.
[13] See docket no. 73 and 74.
[14] Closing originally scheduled for August 2026 was extended at the request of the buyer.

Liquidation Analysis. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such Claim and equity interest holders would receive in a chapter 7 liquidation. This Plan meets such test. The Debtor refers creditors to the Liquidation Analysis attached hereto as **Exhibit A**, which provides additional clarity and support for the Debtor's position that this Plan is in the best interest of creditors.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.01 Class 1. This class shall consist of all Allowed Claims entitled to priority under 11 U.S.C. § 507 [except administrative expense claims under 11 U.S.C. § 507(a)(2)].

3.02 Class 2. This class shall consist of the secured claim of Tree of Life Investments, LLC, pertaining to the real property commonly known as 943 Overlook Trail, Stewart, TN 37175 (Claim 3, Claims Register). This Class is Impaired under the Plan. Creditor shall retain its lien.

3.03 Class 3. This class shall consist of the secured claim of Tree of Life Investments, LLC, pertaining to the real property commonly known as 2731 Sanford Rd, Franklin, TN 37135(Claim 4, Claims Register). This Class is not Impaired under the Plan. Creditor shall retain its lien.

3.04 Class 4. This class shall consist of the secured claim Kirkland Acquisitions, LLC, pertaining to the real property commonly known as 943 Overlook Trail, Stewart, TN 37175 (Claim 5, Claims Register). This Class is Impaired under the Plan. Creditor shall retain its lien.

3.05 Class 5. This class shall consist of the secured claim Wallace Building Supply OpCo, LLC, pertaining to the judgment lien recorded in Williamson, Houston, and Rutherford Counties (Claim 6, Claims Register). This Class is not Impaired under the Plan. Creditor shall retain its lien.

3.06 Class 6. This class shall consist of the secured claim of First National Bank of Middle Tennessee, pertaining to the real property commonly known as 500 Rucker Rd, Murfreesboro, TN 37127. This Class is Impaired under the Plan. Creditor shall retain its lien.

3.07 Class 7. This class shall consist of the secured claim of Wilson Bank & Trust pertaining to the real property commonly known as 2731 Sanford Rd, Franklin, TN 37135 (Claim 10, Claims Register). This Class is not Impaired under the Plan. Creditor shall retain its lien.

3.08 Class 8. This class shall consist of the secured claim of Wilson Bank & Trust, pertaining to the real property commonly known as 2794 Sanford Rd, Franklin, TN 37135 (Claim 11, Claims Register). This Class is Impaired under the Plan. Creditor shall retain its lien.

3.09 Class 9. This class shall consist of the secured Claim of First National Bank of Middle Tennessee, pertaining to the real property commonly known as 304 Scruggs Ave, Franklin, TN 37064. This Class is Impaired under the Plan. Creditor shall retain its lien.

3.10 Class 10. This class shall consist of the recorded Order of Luke Nemeth and Dreamhomes, Inc., recorded at Book 9759, Page 723, Williamson County Register of Deeds Office. This class is Impaired under the Plan. Creditor shall retain its lien.

3.11 Class 11. This class shall consist of the Claims of all non-priority unsecured creditors of the Debtor not expressly included in the definition of any other class. This Class is Impaired under the Plan. This class includes, without limitation, Claims arising out of the rejection

of any executory contract or unexpired lease, each Allowed Claim secured by a lien on property in which the Debtor has an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to any other provision of Chapter 5 of the Bankruptcy Code, and each such Claim of the class described in 11 U.S.C. § 507(a), to the extent that the Allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND COURT FEES

4.01 Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense Claims Allowed under §507(a)(2) and priority tax Claims under § 507(a)(8) are not in a class.

4.02 Administrative Claims. Except as otherwise provided under the Plan, each holder of an administrative expense Claim Allowed under § 503 of the Code will be paid in full for any approved administrative expense Claims on the later of the Effective Date or the date on which the applicable administrative expense Claim becomes Allowed. All applications for payment of administrative Claims must be filed within ninety (90) days after the Effective Date, including all Claims for professional fees for approved professionals in this case.

4.03 Priority Tax Claims. With respect to a Claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of such Claim will be paid in full as soon as practicable after the Effective Date. These Priority Tax Claims include the following: Tennessee Department of Revenue (Claim 1, Claims Register, in the amount of $2,576.85); Houston County Trustee (Claim 2, Claims Register, in the amount of $447.00); Williamson County Trustee (Claim 7, Claims Register, in the amount of $1,200.32, Claim 8, Claims Register , in the amount of $1,771.26, and Claim 9, Claims Register, in the amount of $1,229.60); and Rutherford County Trustee (in the estimated amount of $2,779.00).[15]

4.04 Post-Confirmation Tax Claims. All tax Claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

## ARTICLE V
## TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

5.01 Class 1 - Priority Claims Other Than Priority Tax Claims. Each person or entity holding a Class 1 Claim shall be paid the Allowed Amount of such Claim in cash, in full, on the latest of: (i) the Effective Date; (ii) the date such Claim is Allowed by Final Order;
or (iii) the date such payment is due under applicable law. Each Contested Priority Claim shall become an Allowed Priority Claim only upon entry of, and only to the extent such Claim is Allowed by, a Final Order. If any Allowed Priority Claims (excluding Debtor's Attorneys' Fees) are not paid in cash in full on the latest of (i) the Effective Date; (ii) the date a Contested Priority Claim is Allowed in whole or in part by Final Order; or (iii) the date such payment is due under applicable law, then the unpaid portion of such Allowed Priority Claims shall bear interest from the Effective Date until the date of payment at the Legal Rate *if required by any agreement or applicable non-bankruptcy law*. The fees and expenses of the Debtor's professionals, including those that have been approved and have not been paid, and those that are subject to approval in the future, are in this class, but will not be due until the 31st day after entry of an order approving such fees.

[15] https://trustee.pay.rutherfordcountytn.gov/#/WildfireSearch

5.02 Class 2 – Secured Claim of Tree of Life Investments, LLC. This claim is for the mortgage secured solely by the real property commonly known as 943 Overlook Trail, Stewart, TN 37175 (Claim 3, Claims Register). This class is Impaired, and creditor shall retain its lien. This claim is fully secured, and shall be paid $86,663.01 with interest at the rate of 8.75%, in 59 monthly installments of $1,121.21 commencing on the Effective Date, and a balloon payment of $50,000.00 in month 60, for total payments of $117,272.38. Creditor shall release its lien within thirty (30) days after receipt of payment in full. Debtor shall be responsible for payment of property taxes and maintaining insurance on the Property. Nothing shall preclude Debtor from seeking to refinance this debt.

5.03 Class 3 – Secured Claim of Tree of Life Investments, LLC. This claim is for the mortgage secured solely by the real property commonly known as 2731 Sanford Rd, Franklin, TN 37135 (Claim 4, Claims Register). This class is not Impaired, and creditor shall retain its lien. This claim shall be paid in full from the proceeds of the Court-approved sale, in the amount due as of the date of closing.[16]

5.04 Class 4 – Secured Claim of Kirland Acquisitions, LLC. This claim is for the mortgage secured solely by the real property commonly known as 943 Overlook Trail, Stewart, TN 37175 (Claim 5, Claims Register). This class is Impaired, and creditor shall retain its lien. This claim is fully secured, shall be paid in full in the amount $336,053.82, with interest of 8.75%, in 59 monthly installments of $3,598.83 beginning on the Effective Date, with a balloon payment of $250,000.00 due in the 60 and final installment, for a total paid of $465,929.76. Creditor shall release its lien within thirty (30) days after receipt of payment in full. Debtor shall be responsible for payment of property taxes and maintaining insurance on the Property. Nothing shall preclude Debtor from seeking to refinance this debt.

5.05 Class 5 – Secured Claim of Wallace Building Supply OpCo, LLC. This claim is for the judgment lien recorded in Williamson, Houston, and Rutherford counties. (Claim 4, Claims Register). This class is not Impaired, and creditor shall retain its lien. This claim shall be paid in full from the proceeds of the Court-approved sale of 2731 Sanford Rd, Franklin, TN 37135, in the amount due as of the date of closing.[17]

5.06 Class 6 – Secured Claim of First National Bank of Middle Tennessee. This claim is for the mortgage secured solely by the real property commonly known as 500 Rucker Rd, Murfreesboro, TN 37127 (11 U.S.C. § 1111(a) claim). This class is Impaired, and creditor shall retain its lien. This claim is fully secured, shall be paid in full in the amount $434,566.26, with interest of 8.75%, in 59 monthly installments of $3,630.02 beginning on the Effective Date, with a balloon payment of $400,000.00, due in the 60 and final installment, for a total paid of $617,801.12. Debtor also intends to market and sell or refinance this property, and in the event a sale or refinance closes before the final ballon payment, Creditor shall be paid in full pursuant to the original terms of its Note with Creditor. Creditor shall release its lien within thirty (30) days after receipt of payment in full. Debtor shall be responsible for payment of property taxes and maintaining insurance on the Property.

5.07 Class 7 – Secured Claim of Wilson Bank & Trust. This claim is for the mortgage secured solely by the real property commonly known as 2731 Sanford Rd, Franklin, TN 37135 (Claim 4, Claims Register). This class is not Impaired, and creditor shall retain its lien. This claim shall be paid in full from the proceeds of the Court-approved sale, in the amount due

[16] See docket no. 73.
[17] See docket no. 73.

13017 as of the date of closing.[18]

<u>5.08</u> <u>Class 8 – Secured Claim of Wilson Bank & Trust.</u> This claim is for the mortgage secured solely by the real property commonly known as 2794 Sanford Rd, Franklin, TN 37135 (Claim 11, Claims Register). This class is not Impaired, and creditor shall retain its lien. This claim is fully secured, shall not be modified, and shall be paid in accordance with the terms of the corresponding Note, Deed of Trust, and applicable non-bankruptcy law. Monthly payments of $4,994.28 shall begin with on the Effective Date, continuing each month thereafter until changing to $5,103.86 beginning November 1, 2030, and continuing each month thereafter until October 1, 2045, when Debtor shall pay 1 payment of $5,103.39. Pre-petition and post-petition, pre-Effective Date arrearage, estimated at approximately $39,954.24 shall be paid in 60 monthly installments of $665.91 commencing on the Effective Date. To the extent any contrary amounts are indicated in the filed Proof of Claim, the filed Proof of Claim shall control as to all amounts to be disbursed.

<u>5.09</u> <u>Class 9 – Secured Claim of First National Bank of Middle Tennessee</u>. This claim is for the mortgage secured solely by the real property commonly known as 304 Scruggs Ave, Franklin, TN (11 U.S.C. § 1111(a) claim). This class is Impaired, and creditor shall retain its lien. This claim is fully secured, shall be paid in full in the amount $290,000.00, with interest of 8.75%, in 59 monthly installments of $2,648.41 beginning on the Effective Date, with a balloon payment of $250,000, due in the 60 and final installment, for a total paid of $408,904.36. Debtor also intends to market and sell or refinance this property, and in the event a sale or refinance closes before the final ballon payment, Creditor shall be paid in full pursuant to the terms of its original contract. Creditor shall release its lien within thirty (30) days after receipt of payment in full. Debtor shall be responsible for payment of property taxes and maintaining insurance on the Property.

<u>5.10</u> <u>Class 10 – Secured Claim of Luke Nemeth and Dreamhomes.</u> This class is for the Order of contempt against Debtor's principal, Will Coffee, recorded at Book 9759, Page 723, Williamson County Register of Deeds Office, pertaining to Rutherford County Chancery Docket No. 24CV-1739, styled as *Luke Nemeth and Dreamhomes, Inc. v. Will Coffee and MEC Construction*. This claim is disputed, unliquidated, not a debt of the Debtor, and purports to grant Mr. Nemeth and Dreamhomes, Inc. liens against properties of the Debtor who is not a party to said cause. Debtor reserves the right to contest the validity and/or amount of said claim. No payments shall be made to this class until all other classes in the Plan have been paid in full. Notwithstanding, Debtor shall deposit with the Rutherford County Clerk and Master any net proceeds remaining after sale of the properties it intends to sell (as indicated in this Plan) up to an amount of and not exceeding $150,000.00, but only after payment in full of all other claims provided for in this Plan. Creditor shall execute partial releases at closings, as properties are sold by Debtor.

<u>5.11</u> <u>Class 11 – General Unsecured Claims against the Debtor</u>. This Class as detailed in **Exhibit B** consists of all Allowed Unsecured Claims against the Debtor, other than those Claims that are separately classified. This class is Impaired, but the Debtor shall pay all unsecured creditors in full. This class of claims shall be paid one lump sum payment of $10,000.00 on the Effective Date, and the remaining payments shall come from net proceeds of sale or refinance transactions as Debtor closes sales or refinancing on the properties it intends to sell.

## ARTICLE VI
## <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

[18] See docket no. 73.

6.01 6.01 Objection to Claims. The Debtor or any party in interest may file an objection to any Claim in any class on or before the later of (a) 90 days after the entry of a Confirmation Order, or (b) the date on which the Debtor file a Motion for Final Decree pursuant to 11 U.S.C. § 350. Objections not filed within such time will be deemed waived. If any Claim or portion thereof is challenged by an objection, the Claim shall be treated as a disputed Claim.

6.02 Disputed Claim. A disputed Claim is Claim that has not been Allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of Claim has been filed or deemed filed, and the Debtor, or another party in interest has filed an objection; or (ii) no proof of Claim has been filed, and the Debtor have scheduled such Claim as disputed, contingent, or unliquidated.

6.03 Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed Claim unless such Claim is Allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed Claims, distribution may, in the Debtor's sole discretion, be made on any portion of such disputed Claim which is undisputed, pending resolution of the Claim allowance as a whole.

6.04 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise Claims with consent of the settling Claimholder, and without the need for Court intervention or approval.

6.05 Distribution Address and Mailing Method. Any distribution or payment to a creditor shall be sent by first class mail to the creditor's address indicated on the proof of Claim filed by that creditor in this Bankruptcy Case or, if no proof of Claim has been filed, to that creditor's most recent address indicated on Debtor' Schedules or known to Debtor. If a creditor holds an Allowed Claim by virtue of a transfer of such Claim pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure, then distributions to the holder of such Claim shall be sent to the address set forth in evidence of the transfer filed with the Bankruptcy Court. Claimants may change the address to which distributions are sent through amendment of their proof of Claim or written notice delivered to Debtor's counsel. Claimants are responsible for keeping Debtor informed of their current address for receipt of distributions or other payments under this Plan. Excluding mortgages secured solely by Debtor's principal residence (if any), if any distribution or payment remains unclaimed and/or uncashed for a period of ninety (90) days after it is sent, then the creditor to whom such distribution was sent will be deemed to have forfeited the distribution and all future distributions, and such creditor's claim shall no longer be deemed allowed, but rather, such claim shall be deemed disallowed and expunged for all purposes, and such person shall be deemed to have no further claim in respect of such distribution and shall not participate in any further distributions under this Plan. Likewise, if any distribution on any claim other than mortgages secured solely by Debtor's principal residence is returned as undeliverable, no further distributions to such creditor shall be made and such creditor shall be deemed to have forfeited any and all further distributions. Any undeliverable or forfeited distribution shall be returned to the Debtor, to be used in accordance with the terms of the Plan. Whenever any payment or distribution to made under the Plan shall be due on a Saturday, Sunday, or legal holiday as defined in Fed. R. Bankr. P. 9006(a), such payment or distribution shall instead be made on the next business day.

6.06 Claims Subject to Insurance Coverage. With respect to any Claim for which Debtor has insurance coverage, the Claim will be treated as an Allowed Claim only to the extent that the holder of the Claim can establish that such Claim is not recoverable to any extent under the

applicable Debtor's insurance. Unless the holder obtains a Final Order establishing that the Claim is not recoverable to any extent under such Debtor's insurance, such Claim is automatically disallowed and will be entitled to no distribution.

6.07 Precluded Distributions. No distribution shall be made in violation of Bankruptcy Code § 502(d) to an entity or transferee liable for recoverable property for an avoidable transfer. Debtor shall notify each affected creditor of any contention that Bankruptcy Code § 502(d) prohibits any distribution to such creditor. If such notice is given, the Claim held by such creditor will be treated as a Disputed Claim hereunder.

6.08 Treatment of Contingent or Unliquidated Claims. Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Disputed Claim for purposes related to voting, allowance, and distributions under this Plan. Upon request of Debtor or any other party in interest, the Bankruptcy Court shall, in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowance of each such contingent or unliquidated Claim for purposes of voting on this Plan.

6.09 Payment Dates. Unless specifically stated otherwise herein, with respect to any treatment under this Plan that provides for installment payments, the first such installment shall commence on or before the first business day of the second full calendar month after the Effective Date. Whenever any payment or distribution to be made under this Plan (installment or otherwise) shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next business day.

6.10 No Tax or Filing Fee. No governmental entity may tax any transfer of property pursuant to or in furtherance of this Plan or charge any tax or fee for the recording of, any release, deed, transaction, or other document executed pursuant to or in furtherance of this Plan.

6.11 No Interest or Attorney's Fees. Except as expressly provided for in this Plan, or Allowed by the Court, no interest, penalty, late charge, or attorney's fees is to be Allowed on any Claim subsequent to the Petition Date.

6.12 Voiding of Liens. Except for liens otherwise specifically provided to be retained under this Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claims.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Debtor will continue business operations in order to produce revenue sufficient to fund this 60-month Chapter 11 Plan.

7.02 The Debtor proposes to pay $16,700.00 per month for 60 months, which is the amount necessary to pay all administrative costs, priority claims, secured claims, and the unsecured claims in Class 9 as specified in Article V of this proposed plan.

7.03 The Debtor anticipates that upon confirmation of a consensual plan pursuant to 11 U.S.C. 1191(a) the Trustee's services will be terminated pursuant to 11 U.S.C. § 1183(c)(1), and that Debtor will act as "Disbursing Agent." As permitted by 11 U.S.C. § 1194(b), the Debtor also intends to act as disbursing agent in the event of non-consensual confirmation under 11 U.S.C. 1191(b). Upon entry of an Order of Confirmation, Debtor's counsel shall immediately provide Debtor with a disbursement

ledger detailing the payee, payee address, the payment amount and payment frequency for all classes other than unsecured claims.

7.04 Any distribution or payment to a creditor shall be sent by first class mail to the creditor's address indicated on the proof of claim filed by that creditor in the case, or if no proof of claim has been filed, to that creditor's most recent address indicated on the Debtor' Schedules or known to the Debtor. Creditors may change the address to which distributions are sent through amendment of their proof of claim or written notice delivered to Debtor and Debtor's counsel in accordance with Section 8.16. Creditors are responsible for keeping the Debtor informed of their current address for receipt of distributions or other payments under the Plan.

7.05 If any distribution or payment remains unclaimed and/or uncashed for a period of ninety (90) days after it is sent, then the creditor to whom such distribution was sent will be deemed to have forfeited the distribution and all future distributions, and such creditor's claim shall no longer be deemed allowed, but rather, such claim shall be deemed disallowed and expunged for all purposes, and such person shall be deemed to have no further claim in respect of such distribution and shall not participate in any further distributions under this Plan. Likewise, if any creditor's distribution is returned as undeliverable, no further distributions to such creditor shall be made and such creditor shall be deemed to have forfeited any and all further distributions. Any undeliverable or forfeited distribution shall be returned to the Debtor, to be used in accordance with the terms of the Plan.

7.06 Whenever any payment or distribution to made under the Plan shall be due on a Saturday, Sunday, or legal holiday as defined in Fed. R. Bankr. P. 9006(a), such payment or distribution shall instead be made on the next business day.

## ARTICLE VIII
## GENERAL AND MISCELLANEOUS PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a. "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

c. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

d. "Court" shall mean the United States Bankruptcy Court for the Eastern District of Tennessee and the Judge assigned to this case.

e. "Debtor" shall mean W. Gates Real Estate Holdings, LLC, with the status of and rights conferred to Debtor-in-possession by § 1184 of the Code.

f. "Disposable Income" shall mean that term as defined by 11 U.S.C. § 1191(d).

g. "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable. However, the Debtor may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

h. "Interests" shall mean the ownership interests held by the Debtor in Property.

i. "Petition Date" shall mean April 29, 2026.

j. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

k. "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Plan.

l. "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.02 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.04 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06 Retention of Jurisdiction of the Court. Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any proceeding related thereto pursuant 11 U.S.C. § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such

jurisdiction as is necessary to implement the Plan. Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan and to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) To determine all questions and disputes regarding title to Debtor' assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the confirmation date, between a Debtor and any other person, including but not limited to, any rights of a Debtor to recover assets pursuant to the provisions of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of a Debtor's assets;

(i) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(j) To exercise the jurisdiction granted pursuant to section 505(a) and (b) of the Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by a Debtor;

(k) To enforce all injunctions and mandatory acts provided for in this Plan or in the Bankruptcy Code;

(l) To enter a final order concluding and terminating this case; and

(m) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(m) To determine such other matters as may be provided for in the Confirmation order.

8.07 Withdrawal of Plan. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.08 Retention of Claims. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.09 Continued Reporting Requirements. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, the Debtor is required to file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10 Exemptions from Transfer Tax. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Code.

8.11 Modification of the Plan. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtor to modify the Plan under § 1193 and applicable rules.

8.12 Early Payment. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment to any Class of Claims, provided that the Debtor are current on all payments then required to any preceding Class.

8.13 Preservation of Claims and Causes of Action. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' schedules or this Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor' Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $6,425.00, may be the defendant of an avoidance action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan, the Debtor' filed Schedules, and Statement of Financial Affairs to determine whether any cause of action or avoidance action may be pursued against it. Avoidance actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.14 Default Under Plan. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fail to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fail to insure the property securing the creditor's claim for the value of the property, or (iii) dispose of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

8.15 Remedies. In the event of a default, creditors shall take action as they deem appropriate. Without limitation, they may allow the Debtor such additional time as may be reasonably needed to cure such default, they may petition the court for relief from the automatic stay due to the Debtor' default, or they may petition the Court for dismissal or conversion of the case to one under Chapter 7.

8.16 Disclosure of Compensation of Insiders. Pursuant to 11 U.S.C. § 1129(a)(5)(B), Debtor hereby discloses that insider Will Coffee will be employed by the reorganized debtor, but will not receive compensation unless or until all Debt has been paid in full..

8.17 Notice. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtor or Reorganized Debtor:<br>*In the event the Debtor later change their address and provide written notice of such change, the Debtor's new address shall be used for creditors providing notice hereunder.* | W. Gates R/E Holdings<br>2794 Sanford Rd<br>Franklin, TN 37135<br><br>With copy to: |

W. Thomas Bible, Jr.
TOM BIBLE LAW
6112 Shallowford Rd
Chattanooga TN 37421
tom@tombiblelaw.com

If to the Trustee:

Amanda M. Stofan
Farinash & Stofan
100 West M L King Blvd, Ste 816
Chattanooga, TN 37402
amanda@8053100.com

**ARTICLE IX**
EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

9.01 Vesting of Property. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtor's estate in the Debtor. However, in the event of the conversion of this case to one under Chapter 7, all of the property of the Debtor shall re-vest into the Debtor's Bankruptcy Estate for administration by the appointed Trustee.

9.02 Property Free and Clear. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

9.03 Legal Binding Effect. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

9.04 Effect on Third Parties. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.05 Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.06 Continuing Stay. The automatic stay shall continue in force to the extent provided under 11 U.S.C. § 362 until and unless the Court grants relief from such stay.

9.07 Permanent Injunction. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all creditors who have held, hold or may hold claims that existed prior to the Effective Date and all persons who have had any dealings with the Debtor, are permanently enjoined on and after the Effective Date against (i) commencement or continuation of any judicial, administrative, or other action or proceeding against a

Debtor or any of its assets or owned entities on account of claims against a Debtor, or on account of claims released pursuant to this Plan; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against a Debtor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against a Debtor arising from a claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date that is not addressed by the Plan, nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any claims that arose prior to the Effective Date. Parties asserting entitlement to payment of administrative expenses incurred prior to the confirmation date and holders of claims shall be permanently enjoined from asserting any claim against a Debtor or any of its assets or owned entities based upon any act or omission, transaction or other activity that occurred prior to entry of the Confirmation Order, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under 11 U.S.C. § 502.

9.08 Exculpation. Except as otherwise provided in the Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.09 Discharge [if under § 1191(a)]. If this Plan is confirmed under § 1191(a), after the Effective Date of the Plan and the filing of a notice of substantial consummation, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.10 Discharge [if under § 1191(b)]. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.01 Closing of the Case. In the event of consensual confirmation pursuant to 11 U.S.C. § 1191(a) and substantial consummation as defined in 11 U.S.C. § 1101(2), the Reorganized Debtor shall file a notice of substantial consummation and seek entry of a final decree, and the services of the Subchapter V Trustee shall be terminated pursuant to 11 U.S.C. § 1183(c)(1). In the event of nonconsensual confirmation pursuant to 11 U.S.C. § 1191(b), the case will remain open, and after the estate has been

fully administered, Reorganized Debtor shall seek entry of a final decree pursuant to Fed. R. Bankr. P. 3022. Upon entry of a final decree, the Subchapter V Trustee shall be discharged pursuant to 11 U.S.C. § 350(a).

10.02 Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail themselves to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth herein below. In any *Motion for Final Decree*, the Reorganized Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtor' *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved.

10.03 Continued Execution of the Plan after Closing. In the event of consensual confirmation pursuant to 11 U.S.C. § 1191(a), after closing of the case, the Reorganized Debtor shall remit all Plan Payments directly to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtor shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.04 Professional Fees after Closing. After closing of the case, the Reorganized Debtor may continue to avail themselves to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtor. Pursuant to Section 8.06 of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute.

10.05 Payment of Fees to Subchapter V Trustee. Allowance and payment of fees of the Subchapter V Trustee shall be treated in the same manner as fee claims of professionals set forth in Sections 10.02 and 10.04 of this Plan.

10.01 Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against the Debtor or any of its assets or properties, including without limitation any Claim accruing after the Petition Date and prior to the Effective Date.

10.02 Conflict; Plan Controls. To the extent that any provisions of this Plan conflict with any of the terms or conditions of any note, security agreement, loan agreement, deed of trust or similar instrument, the provisions of this Plan shall control.

10.03 Consent to Jurisdiction. By accepting any distribution or payment under or in

connection with this Plan, by filing any proof of Claim, by filing any Cure Claim or objection to the assumption or assignment of any assumed contract, by voting on this Plan, or by entering an appearance in the case, all creditors and other parties in interest have consented, and will be deemed to have expressly consented to the jurisdiction of the Court for all purposes with respect to any and all matters relating to, arising under or in connection with this Plan or the case, including the matters and purposes set forth in this Plan.

10.04 Destruction of Records. After the Effective Date, the Debtor shall have the right to destroy or cause to be destroyed records that they determine to no longer be needed in its business judgment, subject to any otherwise applicable law. Any objection to the destruction of such records must be raised as an objection to Confirmation of this Plan or shall be deemed to be waived.

10.10 Due Authorization. Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may in any way modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

10.11 Conflict; Plan Controls. To the extent that any provisions of this Plan conflict with any of the terms or conditions of any note, security agreement, loan agreement, deed of trust or similar instrument, the provisions of this Plan shall control.

10.12 Setoff. Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which Debtor has an interest in satisfaction of that Creditor's prepetition Claim.

10.13 Applicable Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Tennessee without reference to the laws of other jurisdictions.

10.14 Permanent Injunction. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation order shall provide, among other things, that all Claimants and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor(s) on account of Claims against the Debtor(s), or on account of Claims released pursuant to the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor(s) or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor(s) arising from a Claim. This provision does not enjoin the prosecution of any Claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any Claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative Claims incurred prior to the date of Confirmation shall be permanently enjoined from asserting any Claim against the Debtor or their retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of Claim or interest was filed and whether or not such Claim or interest is Allowed under Section 502 of the Code.

/s/ Will Coffee
Will Coffee
Managing Member
W. Gates Real Estate Holdings, LLC

Respectfully Submitted,

TOM BIBLE LAW

/s/ W. Thomas Bible, Jr.
W. Thomas Bible, Jr.(014754)
6112 Shallowford Rd
Chattanooga, TN 37421
(423) 424-3116
tom@tombiblelaw.com
*Counsel for the Debtor*

# EXHIBIT A: LIQUIDATION ANALYSIS

**HYPOTHETICAL REAL ESTATE SALE: 304 Scruggs Ave, Franklin, TN 37064**

| | |
|---|---|
| Value: | $519,900.00[19] |
| Less 6% realtor | ($31,194.00) |
| Less estimated closing costs | ($2,500.00) |
| Less estimated mortgage payoffs | ($290,000.00)[20] |
| Less homestead | $0.00 |
| *Subtotal Net Proceeds* | *$196,206.00* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250.00 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $4,500.00 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $7,310.30 |
| **Liquidation Value:** | **$183,145.70** |

**HYPOTHETICAL REAL ESTATE SALE: 943 Overlook Trail, Stewart, TN 37175**

| | |
|---|---|
| Value: | $495,000.00[21] |
| Less 6% realtor | ($29,700.00) |
| Less estimated closing costs | ($2,500.00) |
| Less estimated mortgage payoffs | ($422,716.83)[22] |
| Less homestead | $0.00 |
| *Subtotal Net Proceeds* | *$40,083.17* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250.00 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $3,508.32 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $0.00 |
| **Liquidation Value:** | **$35,324.85** |

**HYPOTHETICAL REAL ESTATE SALE: 2731 Sanford Rd, Franklin, TN 37135**

| | |
|---|---|
| Value: | $934,900.00[23] |
| Less 6% realtor | ($56,094.00) |
| Less estimated closing costs | ($2,500.00) |
| Less estimated mortgage and lien payoffs | ($850,605.91)[24] |
| Less homestead | $0.00 |
| *Subtotal Net Proceeds* | *$25,700.09* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250.00 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $2,070.01 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $0.00 |
| **Liquidation Value:** | **$22,380.08** |

[19] https://www.zillow.com/homedetails/304-Scruggs-Ave-Franklin-TN-37064/42633865_zpid/
[20] See docket no. 37.
[21] https://www.zillow.com/homedetails/943-Overlook-Trl-LOT-81-Stewart-TN-37175/449324909_zpid/
[22] See claims and 5, Claims Register.
[23] https://www.zillow.com/homedetails/943-Overlook-Trl-LOT-81-Stewart-TN-37175/449324909_zpid/
[24] See claims 1, 4, 6, 10, Claims Register.

**HYPOTHETICAL REAL ESTATE SALE: 2794 Sanford Rd, Franklin, TN 37135**

| | |
|---|---|
| Value: | $951,400.00[25] |
| Less 6% realtor | ($57,084.00) |
| Less estimated closing costs | ($2,500.00) |
| Less estimated mortgage and lien payoffs | ($850,605.91)[26] |
| Less homestead | $0.00 |
| *Subtotal Net Proceeds* | *$25,700.09* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250.00 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $2,070.01 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $0.00 |
| **Liquidation Value:** | **$22,380.08** |

**HYPOTHETICAL REAL ESTATE SALE: 500 Rucker Rd, Murfreesboro, TN 37127**

| | |
|---|---|
| Value: | $698,400.00[27] |
| Less 6% realtor | ($41,904.00) |
| Less estimated closing costs | ($2,500.00) |
| Less estimated mortgage and lien payoffs | ($434,566.26)[28] |
| Less homestead | $0.00 |
| *Subtotal Net Proceeds* | *$219,429.74* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250.00 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $4,500.00 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $8,471.49 |
| **Liquidation Value:** | **$205,208.25** |

**HYPOTHETICAL PERSONAL PROPERTY SALE: Funds in First Bank Account xxx4058**

| | |
|---|---|
| Value: | $8,593.00[29] |
| Less secured debt | $0.00 |
| Less claimed exemption | $0.00 |
| Less estimated cost of sale | $0.00 |
| *Subtotal Net Proceeds* | *$8,593.00* |
| Less Chapter 7 Trustee fee (25% up to $5,000) | $1,250 |
| Less Chapter 7 Trustee fee (10% from $5,000 to $50,000) | $359.30 |
| Less Chapter 7 Trustee fee (5% $50,000 up to $1,000,000) | $0.00 |
| **Liquidation Value:** | **$6,983.70** |

---

[25] See docket no. 36.
[26] See claims 1, 4, 6, 10, Claims Register.
[27] See docket no. 36.
[28] See docket no. 37.
[29] See docket no. 36.

# EXHIBIT B: NONPRIORITY UNSECURED CLAIMS

The Debtor's unsecured debt, as reflected in the Debtor's schedules and through filed proof of claims, is shown below. The below amounts also include the unsecured portion of any bifurcated claims resulting from treatment in Article V, if any. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amounts listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

| **Name of Creditor** | **Amount of Claim** | **Source of Amount** |
| --- | --- | --- |
| Kenya McEwen | $60,000.00 | Scheduled, not filed |
| Nicole Lawrence | $24,000.00 | Scheduled, not filed |
| Stephen Bratcher | $37,500.00 | Scheduled, not filed |

# EXHIBIT C: DISPOSABLE INCOME ANALYSIS

## W. Gates Real Estate Holdings LLC 12 Month Projected Cash Flow

| **Month** | **August-26** | **September-26** | **October-26** | **November-26** | **December-26** | **January-27** | **February-27** | **March-27** | **April-27** | **May-27** | **June-27** | **July-27** | **August-27** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Projected Beginning Balance | 36,709.18 | 37,759.18 | 38,809.18 | 39,859.18 | 40,909.18 | 41,959.18 | 43,009.18 | 44,059.18 | 45,109.18 | 46,159.18 | 47,209.18 | 48,259.18 | 49,309.18 |
| **Inflow** | | | | | | | | | | | | | |
| Rental Income | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 | 17,550.00 |
| **Total Inflow** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** | **17,550.00** |
| **Outflow** | | | | | | | | | | | | | |
| Chapter 11 Plan Payments | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 | 16,500.00 |
| **Total Outflow** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** | **16,500.00** |
| **Net Cash Flow** | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 |
| Projected Ending balance | **37,759.18** | **38,809.18** | **39,859.18** | **40,909.18** | **41,959.18** | **43,009.18** | **44,059.18** | **45,109.18** | **46,159.18** | **47,209.18** | **48,259.18** | **49,309.18** | **50,359.18** |